UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Cenveo Corporation,                                                        Civil No. 06-4154 (PAM/AJB)
                    Plaintiff,

v.                                                                         **MEMORANDUM AND ORDER**

CelumSolutions Software GMBH & Co
KG, CelumSolutions Software GMBH,
and Jeremy Wilker,
                    Defendants.

---

This matter is before the Court on Defendant Jeremy Wilker's Motion to Dismiss. For the reasons that follow, the Court grants in part and denies in part the Motion.

**BACKGROUND**

Plaintiff Cenveo Corporation provides visual communication services, including customized digital asset management (DAM) services. (Am. Compl. ¶¶ 5-10.) DAM services provide a means to organize, store, and retrieve digital assets such as photographic images, logos, software, documents, design work, and videos. (Id. ¶ 45.) The business of providing DAM services is competitive and involves the development, use, and application of computer software programs to easily obtain, store, retrieve, and transfer digital information. (Id. ¶ 48.)

Defendant Jeremy Wilker was a Cenveo employee from 1996 to 2006. (Id. ¶ 28.) Before resigning in September 2006, Wilker was responsible for providing technical assistance with respect to DAM services and for developing ways to improve customer service in the DAM services market. (Id. ¶ 83-86.) During his employment, Wilker was

informed of his obligation to comply with Cenveo's code of business conduct and ethics, which required Wilker to act with integrity in business transactions and avoid all conflicts of interest. (Id. ¶ 88.)

Defendant CelumSolutions competes with Cenveo in the DAM services market.[1] (Id. ¶¶ 18-19.) CelumSolutions allegedly solicited Wilker to provide confidential information about DAM services provided from Cenveo's Minneapolis office. (Id. ¶¶ 21-27.) Thereafter, Wilker allegedly provided CelumSolutions access to confidential computer systems, computer access codes, pricing information, and other proprietary information. (Id. ¶ 89.) He also allegedly provided CelumSolutions with proprietary information about the design, functionality, and working processes of DAM services programs. (Id.)

The Amended Complaint asserts twenty claims against Wilker. The primary claims are: (1) breach of contract, (2) breach of duty of confidentiality, (3) breach of duty of good faith and fair dealing, (4) breach of duty of loyalty, (5) defamation, (6) tortious contract interference, (7) tortious interference with prospective economic advantage, (8) misappropriation of trade secrets, (9) civil liability for theft, (10) negligence, and (11) violation of the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030 et seq. The remaining claims are conspiracy claims based on the primary claims.

---

[1] Defendant CelumSolutions Software GMBH & Co KG is a limited partnership established under Austrian law. Defendant CelumSolutions Software GMBH is a limited liability company incorporated under Austrian law. (Am. Compl. ¶¶ 11-13.) On December 28, 2006, the Court issued Letters Rogatory to serve these Defendants. To date, neither has responded to the Amended Complaint. Throughout this Memorandum and Order, the Court collectively refers to these entities as CelumSolutions.

Wilker seeks dismissal of all claims against him. He substantively attacks only four claims: (1) breach of duty of good faith and fair dealing, (2) violation of CFAA, (3) negligence, and (4) defamation.[2] For the remaining claims, he argues that Cenveo's pre-litigation tactics warrant dismissal.

**DISCUSSION**

**A.     Standard of Review**

For the purposes of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court takes all facts alleged in the complaint as true. See Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). The Court must construe the allegations in the complaint and reasonable inferences arising from the complaint favorably to the plaintiff and will grant a motion to dismiss only if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986).(citations omitted).

**B.     Breach of Duty of Good Faith and Fair Dealing**

The Amended Complaint alleges that the employment agreement between Cenveo and Wilker included a duty of good faith and fair dealing, which prohibited Wilker from breaching Cenveo security and business interests, required him to act in the best interests of Cenveo during his employment, and forbade him from acting as an agent for competitors.

---

[2] Wilker initially argued that the breach of contract claim also failed as a matter of law, but withdrew his motion as it related to that claim at the oral argument hearing. The Court therefore does not address the merits of that claim.

(Am. Compl. ¶¶ 203-05.) It further alleges that Wilker breached that duty by accessing confidential computer systems, computer access codes, and pricing information, and by providing CelumSolutions with information about the design, functionality, and working processes of software. (Id. ¶¶ 206-09.)

"Minnesota does not recognize an implied duty of good faith and fair dealing in employment contracts." Brozo v. Oracle Corp., 324 F.3d 661, 668 (8th Cir. 2003); Poff v. W. Nat'l Mut. Ins. Co., 13 F.3d 1189, 1191 (8th Cir. 1994) ("the Minnesota Supreme Court has squarely held that there is no implied covenant of good faith and fair dealing in Minnesota employment contracts") (citations omitted). Cenveo argues that this rule only applies in the context of at-will employment termination. However, both the Minnesota Court of Appeals and the Eighth Circuit Court of Appeals have refused to recognize the claim in contexts other than termination. See Brozo, 324 F.3d at 668 (rejecting a claim that the defendant acted in bad faith in refusing to pay sales commissions); Lee v. Metro. Airport Comm'n, 428 N.W.2d 815, 822 (Minn. Ct. App. 1988) (refusing to apply covenant of good faith and fair dealing in a failure to promote case). Thus, the claim fails as a matter of law.[3]

---

[3] "Although the Minnesota courts will not imply a covenant of good faith and fair dealing in employment contracts, recent cases recognize that there can be an express covenant to this effect." Poff, 13 F.3d at 1191. General policy statements do not create an express covenant. Id. Rather, to create an express covenant "there must be specific and definite terms that meet the contractual requirements of an enforceable unilateral offer." Id. Whether an employer extends a unilateral offer is a question of law. Martens v. Minn. Mining & Mfg. Co., 616 N.W.2d 732, 740 (Minn. 2000). To constitute an offer for a unilateral contract, an employer's statement must be sufficiently definite to allow a "court to discern with specificity what the provision requires of the employer so that if the employer's conduct in . . . making . . . decisions affecting the employment is challenged, it can be determined if there has been a breach." Id. at 742. The Amended Complaint fails to

**C.     Defamation**

The Amended Complaint alleges that Wilker communicated false statements in the State of Minnesota to CelumSolutions representatives and "other persons" knowing that the statements would be communicated to customers seeking DAM services. (Am. Compl. ¶¶ 173, 178, 222, 224.) The alleged statements include that Cenveo was in extreme financial distress, that Cenveo would probably be out of business during the coming year, that key employees of Cenveo were leaving Cenveo to join CelumSolutions, and that Cenveo should not be used to provide DAM services. (Am. Compl. ¶¶ 178, 222-24.) Wilker argues that Cenveo failed to plead the claim with sufficient particularity. He emphasizes that the Amended Complaint does not specifically identify to whom Wilker made the statements or where the statements were made.

To properly plead a claim for defamation, a plaintiff must allege that "the defendant published a false statement of fact that concerns the plaintiff and tends to harm the plaintiff's reputation or to lower her in the estimation of the community." D.W. v. Radisson Plaza Hotel Rochester, 958 F. Supp. 1368, 1381 (D. Minn. 1997) (Magnuson, J.) (citations omitted). In addition, "a claim for defamation must be pled with a certain degree of specificity." Id. (citation omitted). "While it is not necessary for the complaint to recite the exact language spoken, it is necessary that the plaintiff identify who made the defamatory statement and what was said." Id. (citation omitted).

---

set forth any specific terms to establish a unilateral offer. Thus, the claim fails insofar as it is based on an express covenant.

The Amended Complaint identifies Wilker as the person who made the statements. It also alleges the content of his statements: that Cenveo was in extreme financial distress, that it would probably be out of business during the coming year, that key employees were leaving Cenveo, and that Cenveo should not be used to provide DAM services. Finally, it states that Wilker made the statements to CelumSolutions representatives in the State of Minnesota. These allegations sufficiently state a claim for defamation.

Nonetheless, two of the statements cannot support a defamation claim. First, the statement that Cenveo should not be used to provide DAM services is non-actionable opinion. See Grillo v. John Alden Life Ins. Co., 939 F. Supp. 685, 688 (D. Minn. 1996) (Davis, J.) (citing Geraci v. Eckankar, 526 N.W2d 391, 397 (Minn. Ct. App. 1995); Lund v. Chicago & Nw. Transp. Co., 467 N.W.2d 366, 368-69 (Minn. Ct. App. 1991)). Second, the statement that Cenveo would probably be out of business during the coming year is a statement about future events and therefore does not imply the existence of a fact. See Schlieman v. Gannett Minn. Broad., Inc., 637 N.W.2d 297, 308 (Minn. Ct. App. 2001) ("Only statements that present or imply the existence of fact that can be proven true or false are actionable under state defamation law. Thus, if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable"). The Court therefore dismisses the portions of the defamation claim based on these non-actionable statements. However, the claim based on the statements of extreme financial distress and the departure of key employees remains.

**D.     Negligence**

The Amended Complaint alleges that Wilker had a duty to exercise reasonable care to maintain the confidentiality of proprietary information, to represent the best interests of Cenveo, and to refrain from causing harm to Cenveo through statements and information provided to competitors and others.  (Am. Compl. ¶ 255.)  It further alleges that Wilker breached those duties when he allowed information to be disclosed to CelumSolutions.  (Id. ¶ 256.)

Wilker argues that Minnesota law does not recognize a negligence claim by an employer against an employee.  Decisions from the Minnesota Supreme Court indicate otherwise.  See Schneider v. Buckman, 433 N.W.2d 98, 102 (Minn. 1988) ("it is . . . well settled that an employer is entitled to recover from the employee damages which the employer was compelled to pay because of the employee's negligence"); Capitola v. Minneapolis, S.P. & S.S.M.R. Co., 103 N.W.2d 867, 869 (Minn. 1960) (recognizing that an employer may sue an employee for damages arising from the employee's negligence and holding that contributory negligence is a defense); Miller v. Simons, 59 N.W.2d 837, 840 (Minn. 1953) (indicating that an employer may succeed in a negligence claim against an employee).  Nonetheless, Wilker argues that Minn. Stat. § 181.970, which was enacted in 1993, statutorily overrules these decisions.  That provision requires an employer to defend and indemnify its employee for civil damages claimed against the employee when the employee was acting in the performance of his duties, unless the employee was guilty of "intentional misconduct, willful neglect of the duties of the employee's position, or bad

7

faith." Minn. Stat. § 181.970(1).

The plain language of § 181.970 imposes a statutory duty on an employer to defend and indemnify an employee for damages arising from the negligent performance of employment duties. The imposition of that duty effectively precludes a negligence action against an employee. To hold otherwise renders a circular result: An employer would have to defend and indemnify an employee for losses the employer seeks from the employee. Because such a construction is absurd, the Court finds that § 181.970 precludes a claim by an employer against an employee for the negligent performance of employment duties.[4]

Cenveo argues that § 181.970 is inapplicable because it applies only to third-party claims against an employee. However, the provision contains no such limitation. Moreover, the provision contains other exceptions, which suggest that if the legislature intended to make further limitations—such as that the provision does not apply to employer-employee claims—the legislature would have so provided. See Minn. Stat. § 645.19 (exceptions within a statute are construed as excluding additional exceptions); see also Indep. Sch. Dist. No. 404 v. Castor, 670 N.W.2d 758, 762 (Minn. Ct. App. 2003) (rejecting argument that a similar provision, which required a municipality to defend and indemnify its employees for damages

---

[4] The Court acknowledges that another court has allowed a negligence claim to proceed despite the enactment of § 181.970. See Carlsen v. Experience Works, No. 04-2676, 2004 WL 234406, at *7-*8 (D. Minn. Feb. 4, 2004) (Tunheim, J.) (rejecting the argument that employees cannot be held liable to employers for losses resulting from the employee's negligence) (citation omitted); see also Carlsen v. Experience Works, Inc., No. 04-2676, 2005 WL 388600, at *2 (D. Minn. Feb. 11, 2005) (Tunheim, J.) (reaffirming denial of summary judgment on the applicability of § 181.970 in a negligence claim brought by an employer against an employee). However, the Carlsen decisions addressed whether the employee acted in bad faith and are therefore distinguishable.

arising from the performance of employment duties, applied only to third-party claims).

The Court emphasizes that § 181.970 does not foreclose all tort actions against employees by employers because the provision does not require employers to defend and indemnify for actions involving "intentional misconduct, willful neglect of the duties of the employee's position, or bad faith." However, the Amended Complaint does not claim that Wilker committed any such acts. To the contrary the Amended Complaint expressly alleges that Wilker "was negligent in the performance of his duties and his breach of those duties" damaged Cenveo. (Am. Compl. ¶ 256.) Because the effect of § 181.970 precludes a claim against an employee for the negligent performance of employment duties, the negligence claim fails as a matter of law.

**E.    CFAA**

The Amended Complaint alleges that Wilker wrongfully and intentionally accessed Cenveo's computer system to obtain confidential information and computer programs and software. (Am. Compl. ¶¶ 260-62.) It further asserts that Wilker provided CelumSolutions unauthorized access to Cenveo's computer system, which allowed CelumSolutions to wrongfully access Cenveo's proprietary information and fraudulently obtain computer programs and software. (Id. at 111-27.) Finally, it asserts that Wilker's unauthorized access to Cenveo's computer system damaged Cenveo by more than $75,000. (Id. ¶ 262.)

Wilker advances two arguments in favor of dismissal. First, he argues that any claim based on alleged violations of 18 U.S.C. §§ 1030(a)(4) and 1030(a)(6) must fail because

9

those provisions create criminal—not civil—liability.[5] A party cannot bring a civil action based on provisions other than § 1030(a)(5). McLean v. Mortg. One & Fin. Corp., No. 04-1158, 2004 WL 898440, *2 (D. Minn. Apr. 9, 2004) (Magnuson, J.). Accordingly, any claim based on violations of § 1030(a)(4) and § 1030(a)(6) fails as a matter of law.

Second, Wilker argues that Cenveo has not pled damage or loss as contemplated by the CFAA. To establish a CFAA claim, Cenveo must show that Wilker intentionally accessed a protected computer without authorization and, as a result, caused an annual loss of at least $5,000. 18 U.S.C. § 1030(g); 18 U.S.C. § 1030(a)(5)(A)(i)-(iii); 18 U.S.C. § 1030(a)(5)(B)(i). The CFAA defines "loss" as "any reasonable cost to any victim, including the cost of responding to the offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred <u>because of interruption of service</u>." 18 U.S.C. § 1030(e)(11) (emphasis added); see also Nexans Wires S.A. v. Sark-USA, Inc., 319 F. Supp. 2d 468, 477-78 (S.D.N.Y. 2004) (because § 1030(e)(11) limits "loss" to costs incurred because of interruption of service, loss of business due to defendant's use of proprietary information was not covered by the CFAA); ResDev, LLC v. Lot Builders Ass'n, Inc., No. 6:04-CV-1374, 2005 WL 1924743 *2-*5

---

[5] Section 1030(a)(4) creates criminal liability for persons who "knowingly and with intent to defraud accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value." 18 U.S.C. § 1030(a)(4). Section 1030(a)(6) provides that a person is criminally liable if he "knowingly and with intent to defraud traffics in any password or similar information through which a computer may be accessed without authorization, if . . . such trafficking affects interstate commerce." 18 U.S.C. § 1030(a)(6).

(M.D. Fla. Aug. 10, 2005) (rejecting the argument that "loss" can cover a trade secret's exclusivity value).[6]

The Amended Complaint alleges that Wilker damaged Cenveo by wrongfully and intentionally accessing its computer system. Notably, however, the Amended Complaint is devoid of allegations that Wilker's access caused an interruption in service or that Cenveo incurred costs associated with responding and conducting damage assessment. As such, the Amended Complaint fails to adequately plead "loss" as defined by the CFAA. Consequently, the claim fails as a matter of law.

**E.     Remaining Claims**

The Amended Complaint asserts several other claims against Wilker. Wilker does not contend that these claims are insufficiently pled or fail as a matter of law. Instead, he relies on many factual assertions and documentary evidence that are outside the Amended

---

[6] Courts disagree on the definition of "loss" and some hold that it is sufficient to plead unauthorized access and use of proprietary information. See, e.g., Sw. Airlines Co. v. Farechase, Inc., 318 F. Supp. 2d 435, 439 (N.D. Tex. 2004) (complaint that alleged loss of at least $5,000 sufficiently pled CFAA claim); H&R Block E. Enter., Inc. v. J&M Secs., LLC, No. 05-1056, 2006 WL 1128744, at *4 (W.D. Mo. Apr. 24, 2006) (allegations that the defendant's "unlawful and unauthorized access and use of . . . confidential customer information" caused the plaintiff to suffer at least $5,000 in damages, including response costs, was sufficient to survive motion to dismiss); HUB Group, Inc. v. Clancy, No. 05-2046, 2006 WL 208684, at *3-*4 (E.D. Pa. Jan. 25, 2006) (allegations that the integrity of the plaintiff's computer database was damaged through the defendant's unauthorized access to confidential information constituted damages under CFAA). The Court disagrees with these decisions, as they ignore the plain definition of "loss" provided in § 1030(e)(11), which requires damages caused by an interruption of service. Similarly, EF Cultural Travel BV v. Explorica, Inc., 274 F.3d 577, 585 (1st Cir. 2001) and Shurgard Storage Centers v. Safeguard Self Storage, Inc., 119 F. Supp. 2d 1121, 1127 (W.D. Wash. 2000) are inapposite because they rely on a previous version of the CFAA that did not define "loss."

Complaint. For example, he submits that his contacts with CelumSolutions were for the purpose of developing a joint venture with CelumSolutions and that the contacts were part of his duties for Cenveo. In addition, he maintains that the Court should dismiss the claims because Cenveo engaged in vexatious pre-litigation tactics. Because Wilker is asking the Court to go well beyond the allegations of the Amended Complaint, the Court denies the Motion as it relates to these claims. See Peck v. Hoff, 660 F.2d 371, 374 (8th Cir. 1981) (because a motion to dismiss does not question the facts supporting a claim, a court need not admit matters outside the pleadings).

**CONCLUSION**

Minnesota law does not recognize an implied covenant of good faith and fair dealing in employment contracts. It also does not recognize defamation claims based on opinion and prediction. Likewise, Minn. Stat. § 181.970 precludes an action by an employer against an employee for the negligent performance of duties. Finally, the Amended Complaint fails to adequately plead "loss" as defined by the CFAA. Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant Jeremy Wilker's Motion to Dismiss (Docket No. 13) is **GRANTED in part** and **DENIED in part**; and

2. Counts III, X, and XI of the Amended Complaint are **DISMISSED with prejudice**.

Dated: March 27, 2007                           s/ Paul A. Magnuson
                                                Paul A. Magnuson
                                                United States District Court Judge